Subsequent to the execution of this mortgage the plaintiff executed two other mortgages to the Central Trust & Safe Deposit Company to secure the payment of coupon bonds made and delivered by it. The first of these subsequent mortgages was executed on April 1, 1884, and secured an issue of coupon bonds amounting in the aggregate to $200,000; and the second was executed on March 1, 1886, and secured bonds of a similar character amounting in the aggregate to $850,000.
The property covered by these two mortgages is more particularly described therein as follows:
“All the railroad and inclined railway of said party of the first part, including roadbed, superstructure, engines, boilers, cars, tools, fixtures, rolling stock, and all real estate upon which said road or any of said property is situated, and all property used in connection with the operation of said inclined railway, all of said property being situated in the county of Hamilton, state of Ohio, and in the city of Cincinnati. Also all street railways, cars, horses, rolling stock, motive power, machinery, tools and appliances connected therewith, belonging to the said, party of the first part, and especially all street railways known, as Routes Nos. ten (10) and sixteen (16) of said city, and all interests of the party of the first part in Route No. fifteen (15) and in all contracts whereby privileges are vested in said party of the first part in any line or lines of street railway of the Cincinnati Street Railway Company, or under any contracts with the city of Cincinnati, or any statutes of the state of Ohio, or any ordinances of the city of Cincinnati; together with all depots, pleasure grounds, horse and car stables, and the property known as the Highland House, and the grounds upon which said house stands; together with all incomes, tolls and rents to which said party of the first part now is. or may be entitled, *531 proceeding therefrom, or connected with any of said property hereinbefore described; together with all property real, personal and mixed, which the said party of the first part may hereafter acquire, for use in any way in connection with said inclined railway, and any or all of. the said street railways connected therewith; together with all corporate franchises, privileges and immunities belonging to the party of the first part, whether derived from the state of Ohio, or the city of Cincinnati, or any other authority or body.”
Plaintiff brings this action because it is desirous of selling certain pieces of real estáte owned by if free from the operation of these mortgages. As to part of this real estate, the plaintiff contends that it is not covered by the trust company’s mortgages, and that therefore there can be no question as to its right to sell irrespective of any claim by the trust company, and it prays for an order of court so finding. As to the remainder of the property, the plaintiff, although admitting that it is covered by the mortgages, contends that it has the right to sell the property free from the operation of the mortgages, provided that the proceeds arising from the sale shall be safely invested by the order of the court and held as security for ail the mortgages. The grounds upon which this latter claim is based will be referred to hereafter.
No relief is asked as against the Winslow mortgage, as Mr. Winslow consents that the property sought to be sold may be sold free from the operation of his mortgage, provided that the company conform to the conditions of the following proviso contained in his mortgage, all of which the plaintiff agrees to do. The proviso is as follows:
“It is a further condition of these presents, that said party of the first part shall by and with the consent of said trustees have the right to sell and convey any parcel of real estate embraced herein, except that upon which its railroad, inclined! plane or street railway is or may be situated, the proceeds of such sale or sales to be paid into the sinking fund.”
No such provision as this is contained in the trust company ’s mortgages.
Recurring now to the first ground upon which plaintiff asks relief, viz., that certain pieces of the property sought to be *532 sold are not covered by these mortgages, I am of the opinion that this claim is well founded as regards lots 11 to 35, inclusive, on the Observatory road and the lots on Oregon and Baum streets; for it appears that these pieces of property have never been used in connection with the operation of the road, nor was such use contemplated in their purchase which was rendered necessary in order to acquire at a reasonable price property which was necessary for such use. As these pieces, therefore, fall outside of the description of the property covered by the trust company’s mortgages, the prayer of the petition so far as they are concerned will be granted.
There is some conflict of testimony as to lots 11, 12 and 13, but under all the circumstances I am inclined to say that the weight of the testimony is that these lots fall in the same category as the other lots on Observatory road, viz., 13 to 35, inclusive. There are also two other pieces of property, part of which I think fall outside of the description in the trust company’s mortgage and part of which fall within it. These pieces are those purchased for the purpose of enabling the plaintiff to construct foot passage ways as a convenient mode of access to its inclined railway and line of road.
It appears that it purchased these two pieces with the sole object in view of carving out of them such passage ways, and that such passage ways were so made and used; but that in order to secure at a reasonable price the necessary ground for these ways, it was also found necessary to purchase more ground than the plaintiff really needed. That which it did not need and did not use falls, I think, outside of the mortgages, but that which it needed and used was a proper purchase, was within the exercise of its corporate right to purchase such real estate as was necessary to carry out the purpose of its incorporation, and falls within that property in the mortgage described as “property used in connection with the operation of said inclined railway” and property used “in any way in connection with said inclined railway and any and all of the street railways connected therewith.”
■'All the remaining property sought to be sold by plaintiff falls clearly within the description of the property covered by *533 the mortgages. This property consists of lots 1 to 10, inclusive, upon which are now situated the car stables near the Highland House; the property on Chapel street, also formerly used for car stables; the Highland House itself and the pleasure resort adjoining it known as the Belvedere.
Plaintiff bases its right to sell this property upon two grounds:
First. That by the proviso before referred to in the Winslow mortgage the plaintiff has the right to sell this property free from the Winslow mortgage, with the consent of Winslow, trustee, provided the proceeds realized from the sale are turned into the sinking fund provided in that mortgage, and held as security for the payment of the same; that the mortgages lo the trust company were made subsequent to the Winslow mortgage, and that therefore they are taken subject to the exercise of the right to sell provided for in that mortgage; and when plaintiff and Winslow, trustee, agree to sell, the trust company can not prevent such sale, provided the money, realized from the sale is turned into the sinking fund for security.
But this ground is clearly unsound. The proviso referred to simply gives the right to the mortgagor upon the consent of Winslow to sell any piece of property free from the operation of the Winslow mortgage, and even if it be conceded for the sake of argument that this is a right as valuable to Winslow as it is to the plaintiff, it nevertheless remains true that the right is only to sell free from the Winslow mortgage. Any subsequent mortgage would then, of course, be taken subject to this right in Winslow. But the trust company does not offer any objection to a sale of this property free from the Winslow mortgage; its objection is to a sale free from its own mortgages, and as these mortgages do not give the plaintiff any such right, it certainly does not acquire that right because it has .stipulated with a former mortgagee for a sale of the property free from such former mortgage. This proposition is so self-evident that it does not require more than a statement of it to make its truth apparent.
“Inasmuch as the mortgagor is supposed to make his own selection of terms in drawing the deed, it is construed most strongly against him and in such manner as to make it a valid *534 and binding security for tbe mortgagee.” Jones on Mortgages, Section 101.
“The mortgagor can do no act prejudicial to the mortgagee’s title. All his acts are subject to the mortgagee’s rights.” Jones on Mortgages, Section 703.
Second. The second ground upon which plaintiff relies, and which would not apply to the Highland House and Belvedere, may be stated as follows: Since these mortgages were executed the plaintiff has at great expense (which has very largely increased the security afforded by them) changed its motive power from that of horses to cables and electricity; that such change was rendered necessary by the progress of invention and the necessities of travel upon its line; and that by reason of this change this property sought to be sold will no longer be used in the operation of the road. That had the plaintiff not adopted these new motive powers it would have been derelict in the duties which as a corporation it owed to the public, and by a proceeding in quo warranto instituted by the state, its affairs would have been wound up and its property sold, in which case the trust company would have been compelled to come into court and set up its lien, have the property sold free therefrom, and its interest therein paid to it out of the proceeds of sale; and that therefore the plaintiff has the right now to sell the property free from these mortgages, provided the court invests the money so realized in such a manner that it shall stand in place of the property as security for the same debt as the mortgages now stand.
This is certainly a novel proposition; and I have not been cited by counsel to any authority or principle of equity jurisprudence which sustains it. Assuming for the sake of argument that plaintiff is correct in its position that had it not changed its motive power it would have been ousted in quo warranto and this property sold as indicated, I am unable to see the force of the argument that, because the plaintiff as a corporation has done its duty to the public, and has thus prevented a sale of its property by the state, which sale would necessarily have resulted in paying off the trust company’s mortgages, that therefore it may now. turn around and say to *535 the trust company we have saved you from one action, which would have destroyed you, and we have thus acquired the right to destroy you by another; or to put it in another way: As we have prevented another from inflicting an injury upon you we ourselves have thus acquired the right to inflict the same injury upon you from which we have saved you. But whatever rights the state may have by proceedings in quo warranto to oust a mortgagor corporation from the further exercise of its franchise and to sell its property in the course of winding it up as incidental to such proceeding, I am quite certain thai any action of the corporation in the line of its duty which prevents such action of ouster and such winding up, does not give to the mortgagor corporation, as between it and the mortgagee, the right to change the terms of its contract with such mortgagee.
The prayer of the petition, therefore, with reference to the remaining property will be denied.
Counsel may prepare a decree in accordance with the principles indicated in this opinion.